1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 8 | **ANGELA PRADO, et al.,** | **Case No.: 4:22-cv-05023-YGR** |
| 9 | Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO** |
| 10 | v. | **DISMISS WITH LEAVE FOR JURISDICTIONAL DISCOVERY** |
| 11 | **FUNPLUS INTERNATIONAL AG, A SWISS** | |
| 12 | **PUBLIC LIMITED COMPANY, AND KINGSGROUP HOLDINGS, A CAYMAN** | |
| 13 | **ISLANDS CORPORATION,** | |
| 14 | Defendants. | |
| 15 | **YOVANNI YANEZ, ET AL.,** | **Case No.: 4:23-cv-02667-YGR** |
| 16 | Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO** |
| 17 | v. | **DISMISS WITH LEAVE FOR JURISDICTIONAL DISCOVERY** |
| 18 | **FUNPLUS INTERNATIONAL AG, A SWISS** | |
| 19 | **PUBLIC LIMITED COMPANY, AND KINGSGROUP HOLDINGS, A CAYMAN** | |
| 20 | **ISLANDS CORPORATION,** | |
| 21 | Defendants. | |
| 22 | **LOREN KELLY,** | **Case No.: 4:23-cv-04122-YGR** |
| 23 | Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO** |
| 24 | v. | **DISMISS WITH LEAVE FOR JURISDICTIONAL DISCOVERY** |
| 25 | **FUNPLUS INTERNATIONAL AG, A SWISS** | |
| 26 | **PUBLIC LIMITED COMPANY, AND KINGSGROUP HOLDINGS, A CAYMAN** | |
| 27 | **ISLANDS CORPORATION,** | |
| 28 | Defendants. | |

United States District Court
Northern District of California

United States District Court
Northern District of California

These cases are brought by three separate groups of plaintiffs on behalf of themselves and multiple classes and subclasses. The plaintiffs bring various claims related to their purchase of allegedly misleading in-app assets within three mobile game apps, Frost & Flame: King of Avalon ("KOA"), Guns of Glory: Lost Island ("GOG"), and State of Survival ("SOS"). Before the Court is an omnibus motion to dismiss those claims filed by defendants FunPlus International AG ("FunPlus") and its parent company KingsGroup Holdings ("KingsGroup").[1] Defendants move to dismiss for lack of jurisdiction, improper venue, and failure to state a claim. For the reasons set forth in this Order, based on a careful review of the pleadings and the briefing submitted by the parties, the Court **GRANTS** the motion to dismiss with **LEAVE TO AMEND**.[2]

## I.     BACKGROUND

The three complaints at issue are similar but distinct cases: *Prado v. FunPlus, Yanez v. FunPlus, and Kelly v. FunPlus*.

The *Prado* action, filed on September 2, 2022, was the first of the three and is brought by named plaintiffs Angela Prado, Staci Turner, Kimberly Surrette, Paul Mazey, Bryan Kauffman, Cyrenna Dewhurst, Derik Niederquell, and Heriberto Santana on behalf of themselves and a global putative class of users of the mobile gaming application SOS. The *Prado* plaintiffs filed the action on behalf of six subclasses of California, Ohio, Pennsylvania, Washington, New York, and international gamers (collectively, the "*Prado* plaintiffs"). (Case No. 4:22-cv-05023-YGR, Dkt. No. 61 ("*Prado* SAC") ¶¶ 18–25.) The plaintiff group includes SOS start dates as early as October 2019, and includes players who stopped playing the game as early as September 2022, and users who were still playing as of filing of the Second Amended Complaint filed December 11, 2023. (*Id.* Dkt. No. 61.)

---

[1] Defendants submit that KingsGroup is the "indirect" parent company of FunPlus because FunPlus is owned by a Luxembourg entity that is owned by a Singapore entity that is owned by KingsGroup. (Case No. 4:22-cv-05023-YGR, Dkt. No. 56-6 ¶¶ 1, 7.)

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for **November 26, 2024.**.

The *Yanez* action is brought by named plaintiffs Yovanni Yanez and Emelyn Matos on behalf of themselves and a global putative class of users of the mobile gaming application KOA, as well as two subclasses of gamers in California and New York (collectively, the "*Yanez* plaintiffs"). (Case No. 4:23-cv-2667-YGR, Dkt. No. 40 ("*Yanez* FAC") ¶¶ 18-19, 135–137.) Plaintiff Yanez alleges he began playing KOA in December 2018 and continues playing. (*Id.* ¶ 18.) Plaintiff Matos likewise began playing around 2018 but has since stopped playing. (*Id.* ¶ 19.) The *Yanez* plaintiffs filed this action in May 2023 and filed an amended complaint, the operative complaint, in December 2023. (Case No. 4:23-cv-2667-YGR, Dkt. Nos. 1, 40.)

The *Kelly* action is brought by named plaintiff Loren Kelly, a resident of California, on behalf of himself and a global putative class of users of the mobile gaming application GOG, as well as a California subclass. (Case No. 4:23-cv-04122-YGR, Dkt. No. 28 ("*Kelly* FAC") ¶¶ 18, 139–140.) Plaintiff Kelly reports that he began playing GOG in April 2023. (*Id.* at ¶ 18.) He brought the action on August 14, 2023, and filed an amended complaint, the operative complaint, on December 11, 2023. (*Id.*)

Each action alleges claims against defendants FunPlus and KingsGroup. While the parties dispute the details about defendants' headquarters and activities in the United States, they agree that FunPlus is now located in Zug, Switzerland, and publishes the games at issue here, KOA, GOG, and SOS. (Case No. 4:22-cv-05023-YGR, Dkt. No. 68 at 2.) KingsGroup is a Cayman Islands holding company with an ownership interest in FunPlus. (*Id.*)

Given the significant overlap of issues in these cases, the Court related them, and on September 5, 2023, the parties stipulated to a uniform briefing schedule for an omnibus motion to dismiss all three cases. (Case No. 4:22-cv-05023-YGR, Dkt. Nos. 49, 51; Case No. 4:23-cv-2667-YGR, Dkt. No. 29; Case No. 4:23-cv-04122-YGR, Dkt. Nos. 11, 15.)

Plaintiffs bring two groups of claims. First, they bring seven categories of claims related to misrepresentations of in-app assets by defendants. These claims involve:

> (a) packs that offer the illusion of price discounts through the strikethrough graphics, hereafter referred to as "False Strikethrough Packs"; (b) packs that falsely advertise that a pack contains extra value by containing an extra percentage increase value relative to normal versions of the same pack, hereafter referred to as "False

Bonus Packs"; (c) packs that falsely allege the limited availability of purchases, hereafter referred to as "False Limited Availability Packs"; (d) packs that falsely represent their popularity, hereafter referred to as "False Popularity Packs"; (e) graphics that falsely represent how far other players have advanced, hereafter referred to as "False Advancement Stats"; and (f) items that "randomly" generate an in-game prize once purchased, hereafter referred to as "Loot Boxes."

(*Prado* SAC ¶ 79; *Yanez* FAC ¶ 74; *Kelly* FAC ¶ 71.) They also bring claims that defendants double charged certain plaintiffs for particular purchases. (*Prado* SAC ¶ 122; *Yanez* FAC ¶ 210; *Kelly* FAC ¶ 211.) Second, plaintiffs bring multiple privacy-based claims based on allegations that defendants collect and transmit a wealth of data from users, evidenced by a logfile stored within an internal folder on devices. (*Prado* SAC ¶¶ 132, 135, 137–139; *Yanez* FAC ¶¶ 117, 120, 122–123; *Kelly* FAC ¶¶ 121, 126–127.)

Defendants move to dismiss all claims on grounds of (i) lack of personal jurisdiction under Rule 12(b)(2), *i.e.* no general or specific jurisdiction, (ii) improper venue, *i.e.* plaintiffs must arbitrate, or litigate in Zug, Switzerland, and (iii) failure to state a claim. The Court analyses defendants' motion to dismiss for lack of jurisdiction. Because the Court cannot yet determine whether it has jurisdiction, it does not consider defendants' arguments regarding improper venue or failure to state a claim in this Order.[3]

## II.    DISCUSSION

### A.  Personal Jurisdiction

Defendants challenge all plaintiffs' claims on the grounds that the Court lacks jurisdiction over FunPlus and KingsGroup.

A motion brought under Federal Rule of Civil Procedure 12(b)(2) challenges a court's exercise of personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Here, California law applies and allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of

---

[3] Defendants request judicial notice (Dkt. No. 68-5) to introduce multiple versions of their privacy policy and app store listings for KOA, GOG, and SOS. The Court **DENIES AS MOOT** defendants' request because the Court does not rely on any of the requested documents for this order. Defendants' request is **DENIED WITHOUT PREJUDICE**, although the Court notes that it may not take notice of documents subject to dispute. *See* Fed. R. Evid. 201.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[California] or of the United States. Cal. Civ. Proc. Code § 410.10. As such, for a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Personal jurisdiction may be either general or specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit, but [] resolve factual disputes in the plaintiff's favor." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up).

### i.    *General Jurisdiction*

Plaintiffs argue that defendants founded FunPlus in California and moved its headquarters from the state recently. (Case No. 4:22-cv-05023-YGR Dkt. No. 72 (Plaintiffs' Opposition to Defendants' Omnibus Motion to Dismiss, hereafter ("Oppo.")) at 7–8.)

To demonstrate general jurisdiction over a defendant in California, plaintiff must establish that the defendant has contacts that are "so 'continuous and systematic' as to render [it] essentially at home in" California. *Williams*, 851 F.3d at 1020 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A company is subject to general jurisdiction in the place where it maintains its headquarters. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). "[C]ourts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987). "One cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place." *Id*. To determine "how far back from either the accrual or filing of the claim they will look; most courts use a 'reasonable time' standard yielding timeframes of roughly three to seven years." *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 506 (9th Cir. 2018) (cleaned up).

Here, although plaintiffs do not separate their specific and general jurisdiction arguments, a reading most favorable to plaintiffs indicates that they fail to plead that defendants ever maintained a headquarters in California. They cite statements on FunPlus's website indicating it was "founded in Silicon Valley" and listing offices in multiple California cities, but come up short of pleading continuous or systematic contacts. For their part, plaintiffs also cite articles and LinkedIn posts hinting a potential past California headquarters. For example, plaintiffs cite posts by the Economic Promotion Canton of Zug, Switzerland stating in December 2022 that "FunPlus, one of the world's largest game studios, recently has moved its headquarters from #SiliconValley to #Zug in the Greater Zurich Area." (Oppo. at 9 (citing Dkt. No. 72-7 ("Janove Decl." ¶17.)) Another December 2022 statement stated: "Great to have the game studio FunPlus moved its HQ from Silicon Valley to Canton Zug in Greater Zurich Area." (*Id.*) Plaintiffs also cite LinkedIn posts in attempt to establish that Andy Zhong, FunPlus co-founder and CEO, listed "San Francisco Bay Area" as his location on the website. (*Id.* (citing Janove Decl. ¶13.))

Defendants file an affidavit contradicting these claims, however, stating that the LinkedIn posts and articles cited therein are inaccurate. They state that the company did not move headquarters from California to Switzerland, but rather from Geneva, Switzerland to Zug, Switzerland. (Dkt. No. 68-1 ¶¶ 7, 12.) Instead of the company, it was one senior employee who relocated. (*Id.* ¶¶ 10, 15, 17.) Further the move occurred in December 2020, and not 2022 as the article implies. (*Id.* ¶ 10.) Plaintiffs do not provide an affidavit opposing these factual contentions. *See Mavrix* 647 F.3d at 1223.

The articles and LinkedIn posts, while suspicious, stop short of establishing that any California location was ever a headquarters, or any more significant or influential than other offices. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) ("General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."). Therefore, plaintiffs' pleadings do not establish contacts so continuous or systematic as to render either defendant at home in California. The Court therefore **GRANTS** defendants' motion to dismiss with **LEAVE TO AMEND.**

*United States District Court*
*Northern District of California*

      *ii.*     *Specific Jurisdiction*

      Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up). Said another way, personal jurisdiction requires the Court to evaluate whether the specific activity giving rise to the plaintiff's causes of action is sufficiently related to the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445–46 (1952). The Ninth Circuit applies a three-prong test to determine whether a non-resident defendant's activities are sufficiently related to the forum state to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

      The plaintiff bears the burden of demonstrating the first two prongs. *Id.* If the plaintiff fails to satisfy either of these prongs, then personal jurisdiction is not established in the forum state. *Id.* If the plaintiff carries this burden, then the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable. *Id.* Where, as here, a motion to dismiss is based on written submissions—rather than an evidentiary hearing—the plaintiff need only make a *prima facie* showing of jurisdiction. *Schwarzenegger*, 374 F.3d at 800. A plaintiff makes a *prima facie* showing by demonstrating facts that, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

      As to the first prong, defendants purposely directed their activities to California. At the outset, though the parties do not provide statistics for California specifically, almost 30 percent of global revenues relating to the three games at issue come from the United States. (Dkt. No. 78-10

United States District Court
Northern District of California

¶ 6.)[4] Further, defendants appear to employ workers or have offices in California. As of March 1, 2024, FunPlus's website listed offices in San Francisco and Irvine, CA on its "Careers" page. It also stated "FunPlus was established in Silicon Valley in 2010, and still maintains a tech team in the area." Defendants' own declaration lists several employees, including high-ranking executives, employed by a corporate entity referred to as "Imagendary USA LLC," which was previously called KingsGroup USA, LLC, and is owned by KingsGroup.[5] (Dkt. No. 68-3 ("Wang Decl.") at ¶ 13; Petrovic Decl. ¶ 30.) This entity has submitted filings to the California Secretary of State listing San Francisco and San Mateo addresses. (Dkt. No. 72-6 ("Vulić Decl.") ¶¶ 4–6, Exs. A–C.) Further, a press release on FunPlus's website from March 2022 announced the recruitment of a Senior Director for Business Development for North America and touted his potential to give FunPlus "precedence in California and other locations close to the HQ of key platform and IP partners." (Janove Decl. ¶ 11.) Perhaps to establish such precedence, KingsGroup licensed the rights to California-headquartered company Warner Brothers' "Joker" character for use in its State of Survival game. Finally, plaintiffs allege California investors contributed to two prior fundraising rounds for FunPlus. (*Id.* ¶ 25.)

Defendants rely *on Voodoo SAS v. SayGames LLC*, to argue that distributing apps on app stores does not constitute California-directed activities. No. 19-CV-07480-BLF, 2020 WL 3791657 (N.D. Cal. July 7, 2020). That case, however dealt with two parties without any offices in the United States, and the court held that the bulk of the challenged conduct "relates to [defendant's] distribution of its game app in the United States generally, not California in particular." *Id.* at *4. Conversely, plaintiffs in this case plead that defendants did have offices and employees in California, specifically. Moreover, the plaintiffs here plead multiple business relationships in California in addition to mere distribution of an app.

---

[4] Plaintiffs also allege that KingsGroup received payments from them through California-based companies Google and Apple. (*Prado* SAC ¶¶ 30–32; *Yanez* FAC ¶¶ 24 –30; Janove Decl. ¶ 22.)

[5] This entity was previously named FunPlus Interactive USA LLC and KingsGroup USA LLC, though it is now named Imagendary USA LLC. (Wang Decl. ¶ 12.)

1   As to the second prong, however, plaintiffs' have not established that their claims "arise

2   out" or "relate to" defendants' California activities. In response to plaintiffs' pleadings, defendants

3   submit an affidavit stating:

> [Imagendary] USA LLC employees were never responsible for the development or
> marketing operations within SOS, and to the extent on an exceptional basis an
> individual might have supported a rare, one-off project related to GOG or KOA, it
> was only through a remote working arrangement to support the Beijing-based
> KingsGroup Studio and/or DianDian, and only until April 2022 at the latest.

7   (Wang Decl. ¶ 13.) The declaration also details how specific employees that plaintiffs cite in their

8   complaint did not contribute to the development or marketing of the games. (*Id.* ¶¶ 28–38.)[6]

9   Plaintiffs do not provide in their complaints, or in declarations contesting defendants' factual

10  assertions, arguments as to why their claims arise or relate to the substantial California contacts

11  they have alleged. Plaintiffs do cite authority for the proposition that "a defendant who has more

12  substantially engaged with the forum—such as one who has 'continuously and deliberately

13  exploited' the forum state's market— will more reasonably anticipate being subject to personal

14  jurisdiction for causes of action that do not directly arise from those contacts, but that nonetheless

15  'relate to' them." (Oppo. at 14 (citing *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079,

16  1091.)) That case, however, dealt with trademark claims, and focused largely on the defendant's

17  "trademark building activities" in the state. *Impossible Foods* 80 F.4th at 1087. Here, plaintiffs do

18  not allege a strong and continuous exploitation of California's market to build a brand. Rather, they

19  allege that defendants have substantial contacts with California, and those contacts somehow have

20  to do with their false advertisement and privacy claims. They have not yet connected the dots,

21  however, on how any of their claims arise out of or relate to defendants' activities in California.[7]

22  The Court, therefore, **GRANTS** defendants' motion to dismiss with **LEAVE TO AMEND**.

23  Further, the Court **GRANTS** plaintiffs' request for jurisdictional discovery. "Jurisdictional discovery

---

25  [6] For example, defendants state that their former Chief Technology Officer "did not

26  contribute in any way to any decision making or the content of the complained-of games or the marketing statements included therein." (Wang Decl. ¶ 30.)

27  [7] The Court does not address defendants' arguments regarding improper venue or failure to

28  state a claim at this juncture because plaintiffs have not yet established that this Court has personal jurisdiction over defendants.

United States District Court
Northern District of California

should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023). Therefore, plaintiffs may seek jurisdictional discovery related to (a) all of defendants', or defendants' affiliates', California offices and personnel (including executives), past or present, and the work done at those offices or by those personnel, (b) defendants' contacts with California companies related to KOA, GOG, and SOS, and (c) defendants' marketing activity related to KOA, GOG, and SOS.

## III.    CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss is **GRANTED** with **LEAVE TO AMEND.** The Court sets the following deadlines for discovery and plaintiffs' amended complaints, if any.

- Jurisdictional discovery to be completed by: January 31, 2025
- Plaintiffs' amended complaints due by: February 17, 2025
- Defendants' anticipated Omnibus Motion to Dismiss due by: March 10, 2025

Plaintiffs shall comply with the Court's Standing Order ¶ 13. Defendants shall not assert new arguments that could have been asserted in the first instance.

This terminates Case No. 4:22-cv-05023-YGR, Dkt. No. 68, Case No. 4:23-cv-04122-YGR, Dkt. No. 39, and Case No. 4:23-cv-02667-YGR Dkt. No. 47.

**IT IS SO ORDERED**.

Date:  November 4, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**